**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS MCBRIDE,<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN SUBSTANCE ABUSE<br>PROFESSIONALS, INC., et al.,<br><br>    Defendant. | :<br>:<br>:<br>: Case No. 2:10-CV-05737<br>:<br>:<br>:<br>: HON. EDUARDO C. ROBRENO<br>: FILED ELECTRONICALLY<br>:<br>:<br>:<br>:<br>: |

**DEFENDANT NATIONAL DIAGNOSTICS, INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS,
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(d), Defendant National Diagnostics, Inc. ("Defendant" or "NDI") respectfully requests that the Court dismiss with prejudice Plaintiff Thomas McBride's ("Plaintiff") negligence claim against NDI. Plaintiff has not and cannot plead a viable cause of action for negligence against NDI because: (1) Plaintiff cannot establish within the context of this particular dispute that NDI owed him a duty of care, an essential element of a Pennsylvania negligence action; and (2) Plaintiff's First Amended Civil Action Complaint ("Amended Complaint"), on its face, fails to allege that NDI engaged in conduct that could be construed as negligent.

**I.  STATEMENT OF FACTS**[1]

Plaintiff was employed by United Parcel Service ("UPS") as a delivery driver. *See* Am. Compl. at ¶ 8. After Plaintiff was convicted of driving while intoxicated

---

[1] For the sole purpose of this motion to dismiss, the facts alleged in the First Amended Civil Action Complaint are accepted as true. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

1

("DWI"), UPS required Plaintiff to submit to unannounced follow-up alcohol and drug tests as a condition of continued employment. *Id.* at ¶¶ 10, 15. In connection with one such test in October 2008, Plaintiff submitted a urine sample which was forwarded to Advanced Toxicology Network of Memphis, Tennessee, to be tested for drugs. Advanced Toxicology Network then reported the results of its tests of Plaintiff's sample to NDI for medical review and reporting to UPS. *See* Affidavit of Dr. Elayne F. Theriault ("Theriault Aff.") at ¶ 4, attached hereto as Ex. A. Plaintiff's urine drug sample tested positive for cocaine. *Id.* Prior to reporting the test results to UPS, NDI conducted a medical review of Plaintiff's laboratory results to ensure that the results were accurate and error-free. *Id.* at ¶¶ 3-4. The medical review was conducted by Elayne F. Theriault, M.D., a medical doctor and licensed Medical Review Officer ("MRO") who provides medical review officer services on behalf of NDI and who has worked as an MRO for more than 25 years. *Id.* at ¶ 4.

Consistent with NDI's standard practice and procedure, Dr. Theriault's office contacted Plaintiff in order to perform a medical review of Plaintiff's positive drug test results before reporting them to UPS. *Id.* at ¶ 6. Plaintiff spoke with Dr. Theriault by telephone on November 4, 2008, at which time Plaintiff denied that he had used cocaine recently but admitted that he had used cocaine a few months earlier. Theriault Aff. at ¶ 7. Plaintiff also told Dr. Theriault that he underwent a dental procedure five days before he provided his urine sample for testing, but he made no mention of receiving medication during his dental procedure. *Id.* In response to Dr. Theriault's questioning, Plaintiff also stated that he believed cocaine could have been placed in the food or drinks that he consumed prior to his drug test. *Id.* Dr. Theriault determined that because cocaine is

2

detectable in urine for no longer than 72 hours after use, neither Plaintiff's past use nor any medical use of cocaine during his dental appointment could explain the positive test result. *See* Theriault Aff. at ¶¶ 8-9. She therefore concluded that there was no reasonable medical explanation for the positive test result that would justify reporting it as negative for the presence of cocaine, and she then reported Plaintiff's positive test results to UPS. *Id.* at ¶ 12.

At that time Dr. Theriault also informed Plaintiff that he could request the testing laboratory to re-test the urine sample he had provided. *Id.* at ¶ 13. Although Plaintiff initially declined to have his urine specimen re-tested, he later did request that his urine specimen be re-tested. *Id.* The laboratory accordingly re-tested Plaintiff's urine specimen and, on November 24, 2008, reconfirmed Plaintiff's urine sample to be positive for cocaine. The same day, NDI notified both Plaintiff and UPS of the positive re-test results. *Id.* UPS terminated Plaintiff's employment based on Plaintiff's positive drug test results. *See* Am. Compl. at ¶ 20.

In his Amended Complaint filed on April 6, 2011, Plaintiff alleges for the first time that, during his dental procedure, he was administered a local anesthesia that triggered a false positive for cocaine. *See* Am. Compl. at ¶¶ 22 – 23. Plaintiff never suggested that his use of anesthesia might have caused the positive test result in his interactions with Dr. Theriault, but had he done so, she would have rejected them – as Septocaine would not trigger a false positive result for cocaine on a urine test. Theriault Aff. at ¶ 11. Significantly, however, Plaintiff has admitted that the first time he suggested that his positive test result was false and caused by the use of anesthesia was

3

during his grievance proceeding at UPS – which occurred **after** NDI had already reported to UPS and Plaintiff.  See Am. Comp. at ¶¶ 22-23.

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  On a motion to dismiss under Rule 12(b)(6), a "court shall take all allegations included in the complaint as true and construe them in the light most favorable to the plaintiff." *Reddinger v. Hosp. Cent. Servs., Inc.*, 4 F. Supp. 2d 405, 408 (E.D. Pa. 1998) (*citations omitted*).  However, the court need not accept as true "unsupported conclusions and unwarranted inferences."  *Doug Grant, Inc., v. Greate Bay Casino Corp.,* 232 F.3d 173, 183-84 (3d Cir. 2000) (*citations omitted*).  To survive a Rule 12(b)(6) motion, the plaintiff must articulate enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

While generally, a motion to dismiss under Rule 12(b)(6) tests the adequacy of the complaint on its face, parties are free to include extrinsic material with a motion to dismiss.  *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277 (3d Cir. 1991).  However, the court has the discretion to consider or to exclude the extrinsic material.  If the court chooses in its discretion to ignore the extrinsic evidence and proceeds to consider the motion on the basis of the pleadings alone, attachment of extrinsic evidence to the motion does not affect the standards under which the court will consider the motion.  *Trans-Spec Truck Service, Inc., v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008); *Jones v. City of Cincinnati,* 521 F.3d 555, 562 (6th Cir. 2008).

Generally, if the court chooses to consider the extrinsic material, the motion is converted from a motion to dismiss to one for summary judgment under Federal Rule of

Civil Procedure 56.  *Rosenau v. Unifund Corp.,* 539 F.3d 218, 225 (3d Cir. 2008). Conversion to a motion for summary judgment in this circumstance, however, is not automatic.  *Swedberg v. Marotzke*, 339 F.3d 1139, 1142-45 (9th Cir. 2003); *Casazza v. Kiser*, 313 F.3d 414, 417-18 (8th Cir. 2002).  For instance, some courts have held that conversion is not necessary where the extrinsic materials are ultimately found to be "irrelevant" to the court's resolution of the motion to dismiss the complaint.  *Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 701 (8th Cir. 2003); *Terracom v. Valley Nat. Bank,* 49 F.3d 555 (9th Cir. 1995).

Plaintiff has failed to allege facts sufficient to state a claim of negligence by NDI, rendering Plaintiff's assertion of a right to the relief requested merely speculative and conclusory.  Where, as in this case, it is clear that "plaintiff's claims are flawed in their legal premise" such that they "are destined to fail" the claims should be dismissed, and "spare the litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.* 988 F.2d 1157,1160 (Fed. Cir. 1993).  Under these circumstances, Plaintiff McBride's claim against NDI in the Amended Complaint should be dismissed with prejudice, or alternatively, NDI is entitled to summary judgment as a matter of law.

### III.   ARGUMENT

#### A.   Plaintiff Fails To Meet The Threshold Requirements For Pleading A Claim For Negligence.

Under Pennsylvania law, a negligence claim requires in the first instance that the allegations in a complaint "establish the breach of a legally recognized duty or obligation that is causally connected to the damages alleged."  *See Sharpe v. St. Luke's Hosp.*, 573 Pa. 90, 95 (2003) (citing *Martin v. Evans*, 551 Pa. 496, 502 (1998)).   Here, even

accepting the allegations in Plaintiff's Amended Complaint as true, the Complaint still fails altogether to allege any relationship between Plaintiff and NDI that would establish the existence (much less breach) of a duty on the part of NDI to Plaintiff. Moreover, aside from Plaintiff's merely conclusory and legally inadequate allegation that "Defendants had a duty of care to ensure the accuracy of the drug test" – which NDI disputes – Plaintiff does not (as indeed he cannot) allege that NDI actually engaged in any conduct in breach of that alleged duty of care.

> **1. The Amended Complaint Fails to Allege A Relationship Between NDI And Plaintiff Sufficient to Establish That NDI Owed Him A Duty of Care.**

Plaintiff's conclusory allegations in his Amended Complaint do not plead, as a matter of law, a sufficient relationship between NDI and Plaintiff to create a duty of care of the type contemplated in the leading case, *Sharpe v. St. Luke's Hosp.*, *supra,* 573 Pa. 90, 95 (2003). In *Sharpe*, the Pennsylvania Supreme Court held that under the facts as specifically presented in that case, the defendant hospital owed a duty of reasonable care to the test subjects with regard to the collection and handling of their urine specimens for employment-related drug tests. Plainly, the test established for the courts and applied in *Sharpe* to determine in any particular case whether a duty of care exists between plaintiffs and defendants is *individualized in nature* and turns on facts particular to the parties' dispute. *Sharpe, 573 Pa. at 96.* The Court explained that in determining whether a particular defendant owes a particular plaintiff a duty of care, a court must balance the following factors: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and forseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *Id.* (citing *Althaus v. Cohen*, 562 Pa. 547, 553 (2000)); *see also*

6

*Brisbine v. Outside In Sch. Of Experimental Educ., Inc.*, 2002 Pa. Super. 138 (Pa. Super. 2002) ("Whether a duty exists is a question of law for the trial court to decide").

As to the first factor – the relationship of the parties – Plaintiff cannot, as a matter of law, establish that a sufficient relationship existed between himself and NDI to permit his negligence claim against NDI to survive. *See Sharpe*, 573 Pa. at 96. In fact, the Amended Complaint alleges no relationship whatsoever between Plaintiff and NDI, except for the allegations that NDI performed the urine test and that the result was "false," and that therefore reporting the test results to UPS was negligent. These conclusory allegations can be disregarded by the Court, and in any event within the context of this case do not plead, as a matter of law, a sufficient relationship between NDI and Plaintiff to create a duty of care of the type contemplated in *Sharpe* regarding NDI's alleged negligent reporting of the urine test results to the Plaintiff's employer.

Indeed, the facts of *Sharpe* illuminate the critical differences between this case and the record before the Court in that case. In *Sharpe*, the plaintiff reported to the hospital to provide a urine specimen for drug testing at the direction of her employer, Federal Express. The hospital forwarded the plaintiff's urine samples to a laboratory for testing. After the plaintiff tested positive for cocaine, she filed a lawsuit alleging that the hospital had mishandled her urine specimen and that numerous readily evident defects in the recorded chain of custody caused a false positive test result. The Court held that, on the record before it, the hospital owed the plaintiff a duty of care, reasoning that it should have realized that any negligence with respect to the alleged mishandling of her urine specimen and failure to properly establish a chain of custody as described by the plaintiff could harm her employment. *Id*.

In contrast to *Sharpe*, Plaintiff does *not* allege directly or even indirectly that NDI mishandled his urine specimen when it conducted a medical review of his drug test sample, nor that there was any patent defect in the chain of custody.  Furthermore, in stark contrast to *Sharpe*, Plaintiff does not allege any relationship with NDI through which he could claim that NDI otherwise should have had doubts about the complete accuracy of the urine test results.  Rather, Plaintiff merely alleges in a completely conclusory manner that NDI performed a drug test that resulted in an allegedly "false" positive for cocaine, and that NDI "should have known that errors in processing or reporting of the results of Plaintiff's drug test could negatively affect [his] employment." *See* Am. Compl. at ¶ 27.

In fact, if the Court should choose to review the exhibits attached to this Motion, it is clear in this case that the relationship that *did* exist between Plaintiff and NDI could not support any allegation that NDI should have known that negligence on NDI's part in reporting the positive for cocaine test result could cause Plaintiff harm.  Defendant NDI in its independent capacity as a reviewer of the drug test results received from the laboratory evaluated, with input directly from the Plaintiff: (i) whether the test sample had been properly handled by the testing laboratory, and (ii) whether there was a reasonable medical explanation for the positive result.

Beyond the bald unsupported allegation that the positive test result was "false," Plaintiff has not and cannot set forth any specific allegations that establish a relationship with NDI in which NDI, in either verifying the laboratory's positive test results or in

8

reporting the test as positive, even *could* "negligently" be reporting an accurate positive test result, which could forseeably cause Plaintiff harm.

NDI's experienced medical review officer, Dr. Theriault, conducted a thorough review of the laboratory's drug test results for Plaintiff, *and spoke directly with Plaintiff regarding his opinions on why the test may have detected benzolecgonine, the cocaine metabolite that triggers a positive test result when detected in a urine sample.* Plaintiff did not report to Dr. Theriault that he had been administered the local anesthesia, Septocaine, or any other medication, during a dental procedure – and, in fact, Plaintiff never reported a prior administration of Septocaine to Dr. Theriault at all. *See* Theriault Aff. at ¶ 10.

In short, there is no allegation in the Complaint that a relationship existed between Plaintiff and NDI such that NDI should have been aware of his exposure to drugs that could give rise to a "false" positive for cocaine test result. Plaintiff alleges only that at his "appeal" through his union did he first assert that being administered Septocaine caused a false positive report. However, by Plaintiff's own account in his Amended Complaint, this occurred only well after NDI reported the test results to his employer – at point after which *any* relationship with the Plaintiff had ceased. Thus, Plaintiff fails to allege, and cannot establish, a relationship with NDI such that NDI owed him a duty of care with respect to considering whether plaintiff's alleged use of anesthesia in a dental procedure could have caused an inaccurate positive test result when NDI reported the positive test result to Plaintiff's employer. Furthermore, the relationship that *did* exist between Plaintiff and NDI, and which Plaintiff did establish in the Amended Complaint, was one in which NDI had every reason to believe that the positive test result for cocaine

9

use was *not* inaccurate. Because the relationship between NDI and Plaintiff does not establish that NDI should, or even could, view the positive test for cocaine to be anything but a true positive at the time it communicated the result to UPS, there can be no duty to Plaintiff for NDI to breach regarding communication of that test result to Plaintiff's employer.

The Amended Complaint contains no factual allegation that would allow this Court to conclude that NDI owed Plaintiff a duty of care with respect to the portion of the testing process he now claims went awry, and absent establishment of a duty of care, Plaintiff's claims of negligence must be dismissed.

### 2. The Amended Complaint Fails to Allege That NDI Engaged In Conduct Forseeably Likely to Harm Plaintiff.

The *Sharpe* analysis also requires this Court to consider the social utility of NDI's conduct, as well as the nature of the risk and forseeability of any alleged harm. NDI does not deny that its participation in the drug testing process has social utility, and that generally speaking, inaccurate reporting to an employer could lead to the foreseeable consequence of an employee's termination. However, there is also a social utility in recognizing that NDI's review processes offers tested individuals an opportunity to explore the possibility of "false positive" test results before tests are reported, and that allowing claims of negligence based on "facts" communicated only long after this interactive process is completed would make the swift resolution of disputed test results impossible, impose unnecessary costs to all involved in the testing process, and greatly reduce the social utility of testing in the first instance. Where, as here, the Plaintiff's employment requires him to drive a commercial motor vehicle over the public roads, the social utility of the testing process is particularly significant. Permitting frivolous claims

to go forward against an MRO based on information allegedly revealed only after the testing process was complete undermines the entire system and only serves to encourage litigation in lieu of efficient resolution of the testing process.

Moreover, where as here the Amended Complaint fails to allege facts even suggesting that NDI's quality control procedures were insufficient as a matter of law, it is impossible to say that the alleged "injury" was foreseeable. *Sharpe*, 573 Pa. at 96-97. NDI engaged in a detailed review of Plaintiff's drug test that included speaking with him to ascertain whether his positive test result could be explained by some lawful medical reason (e.g., the use of a prescription or over-the-counter medication). Plaintiff participated in the process, but failed at that time to offer any explanation for the alleged positive test result (other that to suggest that the test might reflect a "true" positive for cocaine mistakenly or innocently, but in any case, actually ingested). Thus, it is illogical to conclude that NDI's practices as applied to Plaintiff could have led to a foreseeable harm. Plaintiff raised his Septocaine exposure as an explanation for the alleged false positive only with his employer, and only **after** NDI had verified his test results and UPS had terminated his employment. *See* Am. Compl. at ¶¶ 20-24. Plaintiff's claim, therefore, should be dismissed as failing to meet the legal threshold necessary to state a claim for negligence.

### 3. Further Amendments to The Amended Complaint Would Be Futile.

The facts further demonstrate that Plaintiff cannot salvage his claim against NDI through further amendments to his Amended Complaint. NDI's MRO, Dr. Theriault, has more than twenty-five years of experience reviewing and evaluating drug test results. During the course of Dr. Theriault's review, she considered various reasons that might

11

explain the test result and rejected them.  Specifically, Plaintiff stated that he underwent a dental procedure five days prior to the drug test, and also stated that he believed someone might have placed cocaine in the food or drinks he consumed.  *See* Theriault Aff. at ¶¶ 7-9.  Dr. Theriault determined that a dental procedure that incorporated cocaine could not have accounted for cocaine in Plaintiff's test sample collected five days later, because even if cocaine was administered during his dental procedure, it could be detected for no more than 72 hours after use.  *See id.* at ¶ 8.  Dr. Theriault also rejected Plaintiff's theory that someone placed cocaine in Plaintiff's food or drink, because such an explanation would merely confirm the presence of cocaine in his sample without medical justification – i.e., that the positive test result for cocaine was a "true positive."  *See id.* at ¶ 9.

Significantly, any attempt by Plaintiff to further amend his Amended Complaint to allege that NDI somehow should have known that Septocaine is used in dental procedures and could cause false positive test results also would be futile.  Septocaine is not chemically related to the cocaine metabolite that was detected in Plaintiff's urine specimen.  *See id.* at ¶ 11.  Even had Plaintiff timely presented Dr. Theriault with such an explanation, she would have reached the same conclusion – namely, that cocaine was present in Plaintiff's urine specimen without medical explanation.

Consequently, Plaintiff cannot under any set of facts state a claim for negligence against NDI.  At all times, NDI acted reasonably in conducting its medical review of Plaintiff's drug test.  Plaintiff seeks to impose an obligation on NDI that would be impossible for any testing company to meet when, as here, the Plaintiff's own conduct prevented NDI from the ability to foresee any alleged harm from negligence.

The consequences of imposing such an obligation on NDI would permit any plaintiff to file frivolous claims for negligence, alleging that medical review officers such as Dr. Theriault report "false" positives when, in fact, the plaintiff cannot allege that he or she presented any claim or evidence to the medical review officer that would require further review and analysis before the medical review officer reported his or her drug test results to the employer. To be sure, the public interest would not be served in permitting plaintiffs to proceed with meritless claims of negligent reporting of drug test results when the plaintiff cannot plead facts demonstrating the existence of any reason for the defendant to even suspect the inaccuracy of the test result.

## IV. CONCLUSION

For the foregoing reasons, National Diagnostics, Inc. respectfully requests that the Court dismiss Plaintiff's claim with prejudice.

Respectfully submitted,

s/ Robert C. Drake
Robert C. Drake (PA ID No. 57177)
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321

Attorney for Defendant
National Diagnostics, Inc.

Dated: June 13, 2011

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Motion to Dismiss, or, in the Alternative for Summary Judgment were filed on this 13th day of June, 2011 with the Court's Electronic Case Filing (ECF) system, which will then send a notification of such filing to the following ECF users:

>Matthew B. Weisberg, Esq.
>Weisberg Law, P.C.
>7 S. Morton Ave.
>Morton, PA 19070
>(610) 690-0801
>mweisberg@ppwlaw.com
>
>*Attorney for Plaintiff,*
>*Thomas McBride*
>
>Kevin R. McNulty, Esq.
>Gerolamo, McNulty, Divis & Lewbart
>121 S. Broad St., Ste. 1400
>Philadelphia, PA 19107
>kmcnulty@gmdlfirm.com
>
>*Attorney for Defendant,*
>*American Substance Abuse Professionals, Inc.*

>/s/ Robert C. Drake
>Robert C. Drake

Date:   June 13, 2011